UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
Furniture World, Inc.
    Debtor.                          No. 11-10-13292-SA

**MEMORANDUM OPINION AND ORDER
APPROVING IN PART AND DENYING IN PART
FIRST AND FINAL COMPENSATION APPLICATION
FOR COUNSEL FOR DEBTOR IN POSSESSION
AND ORDERING FILING OF ADDITIONAL APPLICATION(S)**

Debtor in Possession counsel ("Firm", or "Counsel" referring to the Firm's senior attorney as context may dictate) filed its First and Final [sic] Application for Allowance and Payment of Fees and Reimbursement of Expenses by Attorneys for Debtor [in Possession], Furniture World, Inc., for the Period of June 30, 2010 through June 28, 2011 ("Application") on July 27, 2011 (doc 139) and refiled the Application on July 28, 2011 pursuant to instructions from the Clerk's office (doc 141). The Firm noticed the Application out on July 27, 2011 (docs 140 and 142).[1] No objections were received, including no objection from Debtor's management or the United States Trustee.[2] In consequence, the Firm has submitted a proposed form of order to allow it total

---

[1] The notices filed with the Court did not have attached to either of them a copy of the Court mailing matrix that the Firm used to send out the notices. In the future, the Firm should ensure that a copy of the matrix is attached.

[2] The Court notes that the notice of objection deadline provides instructions on how to access a copy of the Application. Doc 142. The instructions refer to ACE, the case management and electronic filing system that was replaced a number of years ago by CM/ECF. The Firm needs to update its form.

fees of $79,386.00, New Mexico gross receipts tax of $5,557.02 on that figure, and costs of $4,201.07.[3]

The Application did not have attached to it the monthly invoices or billing statements for the period at issue. Counsel explained that the invoices (12 in all) were so bulky that the Firm was unable to upload them to CM. When the Court requested copies of the invoices, the Firm promptly provided them in hard copy.

The Court reviewed the invoices, together with the Application and attachments to the Application. Based on that review and a review of the Order Confirming Debtor's Second Amended Plan of Reorganization ("Confirmation Order") and the attached Second Amended Plan ("Plan") (doc 131), entered June 29, 2011, the Court has the following observations and rulings:

The Firm charged a combination of $250 per hour and $300 per hour for the time of senior counsel at the Firm. Since there was no objection to the rates charged, the Court allows the billings at the rates charged, without making any ruling on the reasonableness of those rates (with the minor exceptions detailed below).

---

[3] The Court has calculated these figures based on Exhibit B attached to the Application modified by reducing the charge for in-house photocopying from $.40/page to $.10/page. See also Application. Doc 141, page 23 of 36. The proposed order from the Firm took into account the Court's earlier request, conveyed by e-mail, to reduce the photocopying charges.

At the outset, the Court immediately denied without prejudice the first cash collateral motion (doc 6) and request for emergency hearing on same (doc 7) filed on the petition date (June 30, 2011) for deficiencies on the face of the motion – no budget attached and failure to serve Bank of America, the primary secured creditor. Doc 10. The Court would have considered reducing the billing in connection with that filing except that the invoices show virtually no time at all on these first two motions.[4] Although this lack of billing is puzzling, the old basketball adage of "no harm, no foul" would seem to be applicable.[5]

There was also some considerable confusion about a set of three motions filed by the Debtor with a request to shorten quite sharply the time for objections. These orders dealt with an extension of the request for use of cash collateral, and two

---

[4] The billings do show considerably more time was spent starting July 1 on the follow-up motion for use of cash collateral, but this subsequent billing was quite appropriate in the circumstances.

[5] The same applies to what appear to be other anomalies in the invoices. For example, entries for August 3, 2010 show time spent revising the third cash collateral motion and revising the fourth cash collateral order [sic]. August 31, 2010 invoice, page 2. This does not make sense of course, and in fact the CM docket shows the filing of the third motion for use of cash collateral (doc 44) and the entry of the order granting the second motion for use of cash collateral (doc 45) on August 3. The Court assumes these entries were merely mistakes made in the course of recording the time and not caught when the bills were proofread before sending them to the client.

Page -3-

Case 10-13292-t11    Doc 187    Filed 11/21/11    Entered 11/21/11 16:06:36 Page 3 of 8

motions, one to leave the then-current business premises of the Debtor and another to move into the new premises. See generally docs 40, 41, 43, 44, 46, 47, 49, 50-52, 54-57, and 59-61. After several e-mail exchanges, all included in the filing at docket 53 (which pretty much explains and illustrates the problem), it finally became clear to the Court what it was that the Debtor wanted and what it needed. For example, the initial moving papers did not make clear that Debtor needed the month of August to help implement the move to the new location, so that not having a decision on the ability to move out of the one location and move into another until the end of August would not work for the Debtor. Counsel then clearly explained what the problem was, so that ultimately orders were entered granting the relief requested. Suffice it to say that the e-mail correspondence and the filings demonstrate that the filings were not of the quality that an attorney charging $300 per hour should be compensated for, to say nothing of the Court's time used to figure out what was going on and to issue the needed instructions to clear things up. For that reason, the Court will instruct the Firm to deduct $500.00 from the requested fees, together with the applicable gross receipts tax.[6]

---

[6] The Court is still puzzled by the fact that the e-mail it sent the Firm addressing this issue on Tuesday, August 3, 2010 at 5.06 pm either did not arrive at or was not seen by the Firm until the morning of Friday, August 6. Doc 53, page 3 of 10.
(continued...)

Case 10-13292-t11    Doc 187    Filed 11/21/11    Entered 11/21/11 16:06:36 Page 4 of 8

Finally, the application is titled "First and Final", suggesting that the Firm will not be submitting any additional compensation applications. Of course the Firm continues to provide services to Debtor; a cursory glance at the docket shows entries for obtaining a bar date for claims, claims objections and resolutions (including the unsuccessful challenge of the Tara Kappenman claim which involved a half-day trial over a post petition transaction for $2,637), and a request for a final decree. The Court assumes the Firm has received or expects compensation for its work.

The Confirmation Order provides that "[t]he Effective Date of the Plan shall be the date this Confirmation Order is entered." Plan, decretal paragraph B, doc 131, at page 4 of 8 pages. The Confirmation Order was entered June 29, 2011. The Application runs through June 28, 2011. The Court is not aware of any provision in the Code or the rules (national or local) that provides that the Firm may cease to file compensation applications. Nor is there any such provision in the Plan that the Court can find. In fact, paragraph 10.5, Retention of Jurisdiction, provides in relevant part that the Court retains

---

[6](...continued)
The Court only notes that phenomenon as a further anomaly, and is not separately deducting anything for it. Similarly, the Cort has not deducted anything for the cash collateral motion submitted without a budget and without notice to the primary secured creditor.

jurisdiction to "[h]ear and determine all requests for allowance of compensation and/or reimbursement of expenses made by Professional Persons after the Confirmation Date." Id. at ¶10.5(c). While this provision could certainly be construed to say that the Court retains jurisdiction to decide only those applications actually submitted to the Court for decision, the language could also imply that the professionals will continue to file compensation applications. In any event, however, nothing in the Plan dispenses with the obligation to file the applications required by §330. While it does not appear that payment to the class 4 and 5 unsecured claims is dependent on what remains from the reorganized Debtor's monthly or quarterly budget – Plan, ¶¶ 3.6, 3.7 and 4.01 – the disclosure and accountability of the compensation process is nonetheless still important.

IT IS THEREFORE ORDERED as follows:

1. The Firm shall file in CM the invoices that were submitted to the Court in support of the Application, and shall do so no later than Wednesday, November 30, 2011.[7]

2. The Firm shall submit to the Court a form of order consistent with this memorandum opinion, including in the

---

[7] Should the Firm have difficulty uploading the exhibits, it should consult with the Clerk's office about breaking down the collection of billing statements into smaller increments for uploading. This is another example of a problem that a firm that charges $300 per hour should not be presenting to the Court.

order an accounting showing for each professional person the fees charged and at what rate in the Firm, a subtotal of all the fees charged (and showing the subtraction of the $500 referred to in this memorandum decision), the applicable New Mexico gross receipts tax on the fees, and the costs charged together with any applicable New Mexico gross receipts tax on the costs.

3. The Firm shall file one or more additional compensation applications as a condition to obtaining a final decree for Debtor.[8] As part of any further compensation applications, the Firm shall upload as exhibits the relevant billing invoices. Any further notice concerning any applications shall have attached a mailing matrix and shall refer readers to CM/ECF rather than ACE.

4. Should the Firm have any objection to filing a further compensation application, including wanting to argue that the Court has missed an important piece of information, the Firm may request a hearing with notice to the United States

---

[8] If the Firm moves promptly, it can file such an application, and another request for a final decree (if the status of the case justifies it), soon enough to obtain a final decree before the end of the quarter, without the need for a significant reduction in any notice periods. Of course, this assumes that there will continue to be no objections from the Debtor, the creditors or the United States Trustee office. Should there be objections, the Court will conduct a hearing on short notice as needed.

Case 10-13292-t11    Doc 187    Filed 11/21/11    Entered 11/21/11 16:06:36 Page 7 of 8

Trustee and the Court will conduct such a hearing on short notice.

*James S. Starzynski*
James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: November 21, 2011

COPY TO:

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Louis Puccini, Jr
Puccini Law, P.A.
PO Box 50700
Albuquerque, NM 87181-0700

Robert J Muehlenweg
Rammelkamp, Muehlenweg & Cordova, P.A.
316 Osuna Rd NE Unit 201
Albuquerque, NM 8710

James C Jacobsen
111 Lomas NW Ste 300
Albuquerque, NM 87102-2368

Page -8-